PHILLIP A. TALBERT
United States Attorney
HENRY Z. CARBAJAL III
JEFFREY A. SPIVAK
Assistant United States Attorneys
2500 Tulare Street, Suite 4401
Fresno, CA 93721
Telephone: (559) 497-4000
Facsimile: (559) 497-4099

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 1:22-CR-00214-NODJ-BAM |
| Plaintiff, | PLEA AGREEMENT |
| v. | DATE: TBD |
| TERRANCE JOHN COX, | TIME: TBD |
| | COURT: TBD |
| aka T.J. Cox, | |
| Defendant. | |

## I.   INTRODUCTION

### A.   Scope of Agreement.

The indictment in this case charges the defendant with violation(s) of 18 U.S.C. Section 1343 – Wire Fraud (ten counts); 18 U.S.C. Section 1956(a)(1)(B)(i) – Money Laundering (eleven counts); 18 U.S.C. Section 1343 – Wire Fraud Affecting a Financial Institution (five counts); 18 U.S.C. Section 1344 (Financial Institution Fraud); and 52 U.S.C. Sections 30122 and 30109 – Contributions in the Name of Another. This document contains the complete plea agreement between the United States Attorney's Office for the Eastern District of California (the "government") and the defendant regarding this case. This plea agreement is limited to the United States Attorney's Office for the Eastern District of California and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory

PLEA AGREEMENT                                    1

authorities.

### B. Court Not a Party.

The Court is not a party to this plea agreement. Sentencing is a matter solely within the discretion of the Court, and the Court may take into consideration any and all facts and circumstances concerning the criminal activities of defendant, including activities which may not have been charged in the indictment. The Court is under no obligation to accept any recommendations made by the government, and the Court may in its discretion impose any sentence it deems appropriate up to and including the statutory maximum stated in this plea agreement.

If the Court should impose any sentence up to the maximum established by the statute, the defendant cannot, for that reason alone, withdraw his guilty plea, and he will remain bound to fulfill all of the obligations under this plea agreement. The defendant understands that neither the prosecutor, defense counsel, nor the Court can make a binding prediction or promise regarding the sentence he will receive.

## II. DEFENDANT'S OBLIGATIONS

### A. Guilty Plea.

The defendant will plead guilty to Count 3, Wire Fraud; and Count 22, Wire Fraud Affecting a Financial Institution. The defendant agrees that he is in fact guilty of these charges and that the facts set forth in the Factual Basis for Plea attached hereto as Exhibit A are accurate.

The defendant agrees that this plea agreement will be filed with the Court and become a part of the record of the case. The defendant understands and agrees that he will not be allowed to withdraw his plea(s) should the Court not follow the government's sentencing recommendations.

The defendant agrees that the statements made by him in signing this Agreement, including the factual admissions set forth in the factual basis, shall be admissible and useable against the defendant by the United States in any subsequent criminal or civil proceedings, even if the defendant fails to enter a guilty plea pursuant to this Agreement. The defendant waives any rights under Fed. R. Crim. P. 11(f) and Fed. R. Evid. 410, to the extent that these rules are inconsistent with this paragraph or with this Agreement generally.

B. **Restitution.**

The Mandatory Victim Restitution Act requires the Court to order restitution to the victims of certain offenses.

Defendant agrees that his conduct is governed by the Mandatory Restitution Act pursuant to 18 U.S.C. § 3663A(c)(1)(A)(ii) and agrees to pay the full amount of restitution to all victims affected by this offense, including, but not limited to, the victims covered in the factual basis, victims covered in those counts to be dismissed as part of the plea agreement pursuant to 18 U.S.C. § 3663A(a)(3), and other victims as a result of the defendant's conduct for the offenses charged from the periods of 2013 through 2020. The amount of restitution will be no more than $3.5 million dollars.

Defendant agrees that all criminal monetary penalties imposed by the court, including restitution, will be due in full immediately at time of sentencing and subject to immediate enforcement by the government. Defendant agrees that any payment schedule or plan set by the court is merely a minimum and does not foreclose the United States from collecting all criminal monetary penalties at any time through all available means.

Defendant further agrees that he will not seek to discharge any restitution obligation or any part of such obligation in any bankruptcy proceeding.

Defendant shall not sell, encumber, transfer, convey, or otherwise dispose of any of his assets without prior written consent of the United States Attorney, except that the defendant may sell, transfer or convey personal property (including used vehicles and personal items, but not financial instruments, ownership interests in business entities or real property) with an aggregate value of less than $5,000.

Payment of restitution shall be by cashier's or certified check made payable to the Clerk of the Court.

C. **Fine.**

The defendant reserves the right to argue to Probation and at sentencing that he is unable to pay a fine, and that no fine should be imposed. The defendant understands that it is his burden to affirmatively prove that he is unable to pay a fine, and agrees to provide a financial statement under penalty of perjury to the Probation Officer and the government in advance of the issuance of the draft Presentence Investigation Report, along with supporting documentation. The government retains the right to oppose

the waiver of a fine. If the Court imposes a fine, the defendant agrees to pay such fine if and as ordered by the Court, up to the statutory maximum fine for the defendant's offenses.

### D. Special Assessment.

The defendant agrees to pay a special assessment of $200 at the time of sentencing by delivering a check or money order payable to the United States District Court to the United States Probation Office immediately before the sentencing hearing. The defendant understands that this plea agreement is voidable at the option of the government if he fails to pay the assessment prior to that hearing.

### E. Violation of Plea Agreement by Defendant/Withdrawal of Plea(s).

If the defendant violates this plea agreement in any way, withdraws his plea, or tries to withdraw his plea, this plea agreement is voidable at the option of the government. If the government elects to void the agreement based on the defendant's violation, the government will no longer be bound by its representations to the defendant concerning the limits on criminal prosecution and sentencing as set forth herein. A defendant violates the plea agreement by committing any crime or providing or procuring any statement or testimony which is knowingly false, misleading, or materially incomplete in any litigation or sentencing process in this case, or engages in any post-plea conduct constituting obstruction of justice. Varying from stipulated Guidelines application or agreements regarding arguments as to 18 United States Code section 3553, as set forth in this agreement, personally or through counsel, also constitutes a violation of the plea agreement. The government also shall have the right (1) to prosecute the defendant on any of the counts to which he pleaded guilty; (2) to reinstate any counts that may be dismissed pursuant to this plea agreement; and (3) to file any new charges that would otherwise be barred by this plea agreement. The defendant shall thereafter be subject to prosecution for any federal criminal violation of which the government has knowledge. The decision to pursue any or all of these options is solely in the discretion of the United States Attorney's Office.

By signing this plea agreement, the defendant agrees to waive any objections, motions, and defenses that the defendant might have to the government's decision. Any prosecutions that are not time-barred by the applicable statute of limitations as of the date of this plea agreement may be commenced in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this plea agreement and the commencement of any such prosecutions.

The defendant agrees not to raise any objections based on the passage of time with respect to such counts including, but not limited to, any statutes of limitation or any objections based on the Speedy Trial Act or the Speedy Trial Clause of the Sixth Amendment to any counts that were not time-barred as of the date of this plea agreement. The determination of whether the defendant has violated the plea agreement will be under a probable cause standard.

In addition, (1) all statements made by the defendant to the government or other designated law enforcement agents, or any testimony given by the defendant before a grand jury or other tribunal, whether before or after this plea agreement, shall be admissible in evidence in any criminal, civil, or administrative proceedings hereafter brought against the defendant; and (2) the defendant shall assert no claim under the United States Constitution, any statute, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule, that statements made by the defendant before or after this plea agreement, or any leads derived therefrom, should be suppressed. By signing this plea agreement, the defendant waives any and all rights in the foregoing respects.

**F.     Forfeiture.**

The defendant agrees to forfeit to the United States voluntarily and immediately all of his right, title, and interest to any and all assets subject to forfeiture pursuant to 18 U.S.C. §§ 981(a)(1)(C), 28 U.S.C. § 2461(c), and Fed. R. Crim. P. 32.2(b). Those assets include, but are not limited to, the following:

    a. a money judgment in an amount up to $3.5 million, less any forfeited funds.

The defendant agrees that the listed asset constitutes proceeds traceable to violations of 18 U.S.C. § 1343.

The defendant agrees not to file a claim to any of the listed property in any civil proceeding, administrative or judicial, which may be initiated. The defendant agrees to waive his right to notice of any forfeiture proceeding involving this property, and agrees to not file a claim or assist others in filing a claim in that forfeiture proceeding.

The defendant knowingly and voluntarily waives his right to a jury trial on the forfeiture of assets. The defendant knowingly and voluntarily waives all constitutional, legal and equitable defenses to the forfeiture of these assets in any proceeding. The defendant agrees to waive any jeopardy defense,

and agrees to waive any claim or defense under the Eighth Amendment to the United States Constitution, including any claim of excessive fine, to the forfeiture of the assets by the United States, the State of California or its subdivisions. The defendant waives oral pronouncement of forfeiture at the time of sentencing, and any defenses or defects that may pertain to the forfeiture.

### G.  Asset Disclosure.

The defendant agrees to make a full and complete disclosure of his assets and financial condition, and will complete the United States Attorney's Office's "Authorization to Release Information" and "Financial Disclosure Statement" within three (3) weeks from the entry of the defendant's change of plea, including supporting documentation. The defendant also agrees to have the Court enter an order to that effect. The defendant understands that if he fails to complete truthfully and provide the described documentation to the United States Attorney's Office within the allotted time, he will be considered in violation of the agreement, and the government shall be entitled to the remedies set forth in section II.E above.

Defendant expressly authorizes the United States to immediately obtain a credit report to evaluate defendant's ability to satisfy any monetary penalty imposed by the court. Defendant also authorizes the U.S. Attorney's Office to inspect and copy all financial documents and information held by the U.S. Probation Office.

### III.  THE GOVERNMENT'S OBLIGATIONS

### A.  Dismissals/Other Charges.

The government agrees to move, at the time of sentencing, to dismiss without prejudice the remaining counts in the pending indictment. The government also agrees not to reinstate any dismissed count except if this agreement is voided as set forth herein, or as provided in paragraphs II.E (Violation of Plea Agreement by Defendant/Withdrawal of Plea(s)), VI.B (Stipulated Guideline Calculation), and VII.B (Waiver of Appeal and Collateral Attack) herein.

### B.  Recommendations.

1.  Incarceration Range.

The government will recommend that the defendant be sentenced within the applicable guideline range as determined by the Court.

2. **Acceptance of Responsibility.**

The government will recommend a two-level reduction (if the offense level is less than 16) or a three-level reduction (if the offense level reaches 16) in the computation of his offense level if the defendant clearly demonstrates acceptance of responsibility for his conduct as defined in U.S.S.G. § 3E1.1. This includes the defendant meeting with and assisting the probation officer in the preparation of the pre-sentence report, being truthful and candid with the probation officer, and not otherwise engaging in conduct that constitutes obstruction of justice within the meaning of U.S.S.G § 3C1.1, either in the preparation of the pre-sentence report or during the sentencing proceeding.

C. **Use of Information for Sentencing.**

The government is free to provide full and accurate information to the Court and Probation, including answering any inquiries made by the Court and/or Probation and rebutting any inaccurate statements or arguments by the defendant, his attorney, Probation, or the Court. The defendant also understands and agrees that nothing in this Plea Agreement bars the government from defending on appeal or collateral review any sentence that the Court may impose.

## IV. ELEMENTS OF THE OFFENSE

At a trial, the government would have to prove beyond a reasonable doubt the following elements of the offense(s) to which the defendant is pleading guilty:

Wire Fraud (Count Three)

First, the defendant knowingly participated in, devised or intended to devise a scheme or plan to defraud for the purpose of obtaining money or property by means of false or fraudulent pretenses, representations, or promises;

Second, the statements made as part of the scheme were material; that is, they had a natural tendency to influence, or were capable of influencing, a person to part with money or property;

Third, the defendant acted with the intent to defraud, that is, the intent to deceive and cheat; and

Fourth, the defendant used, or caused to be used, an interstate wire communication to carry out or attempt to carry out an essential part of the scheme.

Wire Fraud Affecting a Financial Institution (Count Twenty-Two)

First, the defendant knowingly participated in, devised or intended to devise a scheme or plan to

defraud for the purpose of obtaining money or property by means of false or fraudulent pretenses, representations, or promises;

Second, the statements made as part of the scheme were material; that is, they had a natural tendency to influence, or were capable of influencing, a person to part with money or property;

Third, the defendant acted with the intent to defraud, that is, the intent to deceive and cheat;

Fourth, the defendant used, or caused to be used, an interstate wire communication to carry out or attempt to carry out an essential part of the scheme; and

Fifth, the scheme or plan affected a financial institution.

The defendant fully understands the nature and elements of the crimes charged in the indictment to which he is pleading guilty, together with the possible defenses thereto, and has discussed them with his attorney.

## V.     MAXIMUM SENTENCE

### A.     Maximum Penalty.

The maximum sentence that the Court can impose for wire fraud is 20 years of incarceration, a fine of $250,000, a three year period of supervised release and a special assessment of $100. The maximum sentence that the Court can impose for wire fraud affecting a financial institution is 30 years of incarceration, a fine of $1,000,000, a five year period of supervised release and a special assessment of $100. By signing this plea agreement, the defendant also agrees that the Court can order the payment of restitution for the full loss caused by the defendant's wrongful conduct. The defendant agrees that the restitution order is not restricted to the amounts alleged in the specific count(s) to which he is pleading guilty. The defendant further agrees, as noted above, that he will not attempt to discharge in any present or future bankruptcy proceeding any restitution imposed by the Court.

### B.     Violations of Supervised Release.

The defendant understands that if he violates a condition of supervised release at any time during the term of supervised release, the Court may revoke the term of supervised release and require the defendant to serve up to three additional years imprisonment.

## VI.  SENTENCING DETERMINATION

### A.  Statutory Authority.

The defendant understands that the Court must consult the Federal Sentencing Guidelines and must take them into account when determining a final sentence. The defendant understands that the Court will determine a non-binding and advisory guideline sentencing range for this case pursuant to the Sentencing Guidelines and must take them into account when determining a final sentence. The defendant further understands that the Court will consider whether there is a basis for departure from the guideline sentencing range (either above or below the guideline sentencing range) because there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the Guidelines. The defendant further understands that the Court, after consultation and consideration of the Sentencing Guidelines, must impose a sentence that is reasonable in light of the factors set forth in 18 U.S.C. § 3553(a).

### B.  Stipulated Guideline Calculation.

The government and the defendant agree that there is no material dispute as to the following sentencing guidelines variables and therefore stipulate to the following:

Wire Fraud (Count Three)

1. Base Offense Level: 7 (USSG § 2B1.1(a)(1)

2. Loss Amount: The government will argue up to +16 (USSG § 2B1.1(b)(1)(I), loss between $1,500,000-$3,500,000). The defendant will argue for no less than +14 (USSG § 2B1.1(b)(1)(F), loss between $550,000-$1,500,000).

3. Victim-related Adjustments: n/a

4. Role in the Offense Adjustment(s): +2 (USSG § 3B1.3, abuse of position of trust); Additionally, the government will argue for, and the defendant may oppose, +2 (USSG § 2B1.1(b)(10), sophisticated means).

5. Obstruction Adjustment: n/a

6. Total Offense Level: up to 27

Wire Fraud Affecting a Financial Institution (Count Twenty-Two)

7. Base Offense Level: 7 (USSG § 2B1.1(a)(1))

8. Loss Amount: The government will argue for up to +14 (USSG § 2B1.1(b)(1)(H), loss between $550,000-$1,500,000). The defendant may argue for any loss amount he believes is appropriate.

9. Victim-related Adjustment: The government may argue for +3 (USSG § 2B1.1(b)(17)(A)&(D), more than $1,000,000 in gross receipts from a financial institution)

10. Total Offense Level: up to 24

11. Adjusted Offense Level: up to 29 (wire fraud-1 unit; financial institution wire fraud-1 unit, adds two offense levels to wire fraud group; USSG § 3D1.1(a)(3))

12. Acceptance of Responsibility: See paragraph III.B.2 above

13. Criminal History: The parties estimate, but do not stipulate, that the defendant's criminal history category will be I. If the defendant qualifies as a zero-point offender pursuant to USSG § 4C1.1, the parties acknowledge that the defendant would receive a decrease of two offense levels from his adjusted offense level.

14. Departures: n/a

15. Sentencing Range: up to 63-78 months (up to 51-63 months if the defendant is a zero-point offender). The defendant understands that if the criminal history category differs from the parties' estimate, his Guidelines sentencing range may differ from that set forth here.

16. Departures or Other Enhancements or Reductions:

The parties agree that they will not seek or argue in support of any other specific offense characteristics, Chapter Three adjustments (other than the decrease for "Acceptance of Responsibility"), or cross-references, except that the government may move for a departure or an adjustment based on post-plea obstruction of justice (§3C1.1). Both parties agree not to move for, or argue in support of, any departure from the Sentencing Guidelines. The defendant acknowledges that if the defendant requests or suggests in any manner a different sentence than what is called for under the advisory guideline range as determined by the Court, except as authorized by this agreement, that will be considered a violation of the plea agreement. The government's remedies and remaining obligations in this agreement shall be as outlined in paragraph II.E, above.

The defendant is free to recommend to the Court whatever sentence he believes is appropriate under 18 U.S.C. § 3553(a). The government will recommend a sentence within the applicable guildeline range as determined by the Court.

PLEA AGREEMENT            10

## VII.   WAIVERS

### A.   Waiver of Constitutional Rights.

The defendant understands that by pleading guilty he is waiving the following constitutional rights: (a) to plead not guilty and to persist in that plea if already made; (b) to be tried by a jury; (c) to be assisted at trial by an attorney, who would be appointed if necessary; (d) to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, constitutional challenges to the statutes of conviction, and other pretrial motions that have been filed or could be filed; (e) to subpoena witnesses to testify on his behalf; (f) to confront and cross-examine witnesses against him; and (g) not to be compelled to incriminate himself.

### B.   Waiver of Appeal and Collateral Attack.

The defendant understands that the law gives the defendant a right to appeal his guilty plea, conviction, and sentence. The defendant agrees as part of his plea(s), however, to give up the right to appeal the guilty plea, conviction, and the sentence imposed in this case as long as the sentence does not exceed the statutory maximums for the offenses to which he is pleading guilty. The defendant understands that this waiver includes, but is not limited to, any and all constitutional and/or legal challenges to the defendant's conviction and guilty plea, including arguments that the statutes to which defendant is pleading guilty are unconstitutional, and any and all claims that the statement of facts attached to this agreement is insufficient to support the defendant's plea of guilty. The defendant specifically gives up the right to appeal any order of restitution the Court may impose.

Notwithstanding the defendant's waiver of appeal, the defendant will retain the right to appeal if one of the following circumstances occurs: (1) the sentence imposed by the District Court exceeds the statutory maximum; and/or (2) the government appeals the sentence in the case. The defendant understands that these circumstances occur infrequently and that in almost all cases this Agreement constitutes a complete waiver of all appellate rights.

In addition, regardless of the sentence the defendant receives, the defendant also gives up any right to bring a collateral attack, including a motion under 28 U.S.C. § 2255 or § 2241, challenging any aspect of the guilty plea, conviction, or sentence, except for non-waivable claims.

Notwithstanding the government's agreements in paragraph III.A above, if the defendant ever

attempts to vacate his plea(s), dismiss the underlying charges, or modify or set aside his sentence on any of the counts to which he is pleading guilty, the government shall have the rights set forth in Section II.E herein.

### C. Waiver of Attorneys' Fees and Costs.

The defendant agrees to waive all rights under the "Hyde Amendment," Section 617, P.L. 105-119 (Nov. 26, 1997), to recover attorneys' fees or other litigation expenses in connection with the investigation and prosecution of all charges in the above-captioned matter and of any related allegations (including without limitation any charges to be dismissed pursuant to this plea agreement and any charges previously dismissed).

## VIII. ENTIRE PLEA AGREEMENT

Other than this plea agreement, no agreement, understanding, promise, or condition between the government and the defendant exists, nor will such agreement, understanding, promise, or condition exist unless it is committed to writing and signed by the defendant, counsel for the defendant, and counsel for the United States.

## IX. APPROVALS AND SIGNATURES

### A. Defense Counsel.

I have read this plea agreement and have discussed it fully with my client. The plea agreement accurately and completely sets forth the entirety of the agreement. I concur in my client's decision to plead guilty as set forth in this plea agreement.

Dated: 12/11/24

_____
MARK W. COLEMAN
Attorney for Defendant

///
///
///
///
///

**B.    Defendant:**

I have read this plea agreement and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Further, I have consulted with my attorney and fully understand my rights with respect to the provisions of the Sentencing Guidelines that may apply to my case. No other promises or inducements have been made to me, other than those contained in this plea agreement. In addition, no one has threatened or forced me in any way to enter into this plea agreement. Finally, I am satisfied with the representation of my attorney in this case.

Dated: 12/11/24

_____
TERRANCE JOHN COX
Defendant

**C.    Attorney for United States:**

I accept and agree to this plea agreement on behalf of the government.

Dated: 12/11/24

PHILLIP A. TALBERT
United States Attorney

_____
HENRY Z. CARBAJAL III
JEFFREY A. SPIVAK
Assistant United States Attorney

EXHIBIT "A"

Factual Basis for Plea(s)

Wire Fraud (Count 3)

Defendant COX was one of three owners, and the managing member, of a Fresno-based for-profit company that assisted other companies in applying for and obtaining funding in the form of loans, which were funded through the sale of federal New Markets Tax Credits for the support of development projects in disadvantaged areas of central California (the "Tax Credit company"). At all relevant times, COX was the sole signatory over the Tax Credit company's operating bank account, United Security Bank account x1810. The company was formed in approximately 2010. COX held his ownership in the Tax Credit company through a pass-through entity named MJTJ, LLC.

Beginning on a date not later than in or about December 2013 and continuing to and including October 2019, in the State and Eastern District of California and elsewhere, the defendant knowingly devised, intended to devise, participated in, and executed a material scheme and artifice to defraud others of money and property, and to obtain money and property from others by means of materially false and fraudulent pretenses, representations, and promises.

On approximately December 17, 2013, in the State and Eastern District of California, COX opened, and was the sole signatory on, bank account x8631 at California Bank & Trust. He named the account "MJTJ, LLC d/b/a [Tax Credit company]" to refer to the name of the Tax Credit company. This bank account was opened without the knowledge of the other owners and without the knowledge of the Tax Credit company's accountants, tax preparers or auditors.

Between 2013 and 2018, COX used the x8631 bank account, without the knowledge and consent of the co-owners, to divert checks made out to the Tax Credit company and wire transfers intended for the Tax Credit company from borrowers, vendors and others, and generally used the diverted money for personal expenses, to fund other COX business ventures, and to pay other COX personal and business debts. In diverting checks, COX would take a check made out to the Tax Credit company and deposit it into his x8631 bank account. In diverting wire transfers, COX caused to be sent to borrowers wire instructions that substituted his x8631 bank account for the actual Tax Credit company x1810 operating account. These wire instructions directed borrowers to send funds to COX's x8631 account instead of the Tax Credit company business account by falsely representing x8631 as an account belonging to the Tax Credit company.

For all diverted money in this scheme, the payor did not intend to give or lend any of the money to COX personally for personal expenses or business expenses other than fees and compensation due to the Tax Credit company. Several of the diverted checks deposited into x8631 cleared through servers located outside of the state of California. Several of the diverted wire transfers deposited into x8631 were transmitted via interstate wire transmission.

At all relevant times, COX acted with intent to defraud. As a result of the defendant's conduct, COX caused losses to others.

On or about October 9. 2018, in the State and Eastern District of California, for the purpose of executing the aforementioned scheme and artifice to defraud, defendant knowingly transmitted and

PLEA AGREEMENT                                A-1

caused to be transmitted by means of wire and radio communication in interstate commerce the following writings, signs, signals, pictures and sounds:

| WIRE TRANSMISSION | SENDER | RECEIVER |
|---|---|---|
| Wire transmission of monies in the amount of $120,000 from Westamerica Bank, from account number x6150 to California Bank & Trust, account number x8631, in Fresno, California, which passed interstate | Health Care company #1 | MJTJ, LLC |

In addition to the scheme to defraud the Tax Credit company, the defendant partially owned, and was one of the signatories on the bank accounts for a for-profit company that processed raw almonds for wholesale distribution (the "Almond Processing company").

Beginning on a date not later than in or about April 2017 and continuing to and including at least December 2020, in the State and Eastern District of California and elsewhere, defendant knowingly devised, intended to devise, participated in, and executed a material scheme and artifice to defraud potential investors in and lenders to the Almond Processing company and the Almond Processing company of money and property, and to obtain money and property from investors in and lenders to the Almond Processing company and the Almond Processing company by means of materially false and fraudulent pretenses, representations, and promises.

In approximately 2012, the defendant was brought into the Almond Processing company as a co-owner to provide capital and credit and for the purpose of seeking investor funding to expand operations.

On or about April 24, 2015, the defendant opened a bank account under the name of the Almond Processing company at Wells Fargo Bank, account number x9696, which was not known to or authorized by his business partners and which was not disclosed to the business's accountants. The defendant then used the x9696 account, without the knowledge and consent of the co-owners, to divert money from and intended for the Almond Processing company to the defendant and his other affiliated businesses.

Between April 2017 and February 2018, the defendant solicited individuals to invest in or loan money to the Almond Processing company. Among other false representations, the defendant falsely represented that the money was needed for the Almond Processing company's operating expenses, expansion of the business, or almond processing equipment. The defendant further falsely represented to certain investors/lenders that they would receive a fixed rate of return as well as a percentage of ownership in the Almond Processing company. The defendant used the x9696 account to receive potential investor and lender funds via check made out to the Almond Processing company and ACH transfer. The ACH transfer and several of the checks received by COX and deposited into the x9696 account cleared via interstate wire transmission. At all relevant times, COX acted with intent to defraud. As a result of the defendant's conduct, COX caused losses from lenders/investors and the Almond Processing company.

<u>Wire Fraud Affecting a Financial Institution (Count 22)</u>

Defendant COX was a co-director and board member of a non-profit company that operated an outdoor recreation facility and an indoor ice skating/hockey rink in the City of Fresno (the "Sports non-profit").

Beginning on a date not later than in or about August 2016 and continuing to and including at least August 2017, in the State and Eastern District of California and elsewhere, defendant COX knowingly devised, intended to devise, participated in, and executed a material scheme and artifice to defraud a lender to the Sports non-profit, Clearinghouse CDFI ("Clearinghouse"), a member of the Federal Home Loan Bank of San Francisco and a financial institution pursuant to 18 U.S.C. § 20, and to obtain money and property from Clearinghouse to the Sports non-profit by means of materially false and fraudulent pretenses, representations, and promises.

In 2016, the Sports non-profit, through COX and his business partner, applied to Clearinghouse for a $1.5 million construction loan to develop land owned by the City of Fresno at the corner of Cedar and Dakota Avenues in East Central Fresno, which was commonly known as Granite Park. Clearinghouse required a guaranty from a financially viable source to support the loan. COX submitted the Tax Credit company to Clearinghouse as the commercial guarantor on the loan, including submission of the Tax Credit company's financial information. Because of the size of the construction loan, the Tax Credit company's operating agreement and Clearinghouse required the other owners aside from COX to agree to the debt. Proof of the owners' agreement to guarantee the loan was a material term of Clearinghouse's approval of the loan. As proof of consent to the guaranty, COX submitted and caused to be submitted to Clearinghouse a false and fabricated board resolution purporting to be a record of the Tax Credit company that falsely indicated a board meeting took place and falsely represented that all three Tax Credit company owners agreed to guarantee the $1.5 million loan to the Sports non-profit. In fact, no meeting took place where the Tax Credit company owners agreed to back the Sports non-profit's loan, and the other owners did not agree to guarantee the loan. Nevertheless, COX signed a commercial guaranty for the loan purporting to act on behalf of the Tax Credit company. Following approval of the construction loan, Clearinghouse distributed loan funds to the Sports non-profit. As the Sports non-profit made approved expenditures for the improvement of Granite Park, it would submit requests to Clearinghouse for draws of construction loan funds. The disbursement of the construction loan occurred via five wire transfers from Clearinghouse between February and August 2017. The Sports non-profit would send in funding requests with details of construction expenditures and invoices and once approved by Clearinghouse, loan funds would be wired from Clearinghouse to the Sports non-profit's Wells Fargo Bank account number x8477, opened in Fresno, California. These wire transfers were made via interstate wire transmission. At all relevant times, COX acted with intent to defraud. Due to the defendant's conduct, COX caused a loss in fraudulently obtained loan funds.

///

///

///

///

///

PLEA AGREEMENT                                   A-3

On or about February 9, 2017, in the State and Eastern District of California, for the purpose of executing the scheme and artifice to defraud, defendant COX knowingly transmitted and caused to be transmitted by means of wire and radio communication in interstate commerce the following writings, signs, signals, pictures and sounds:

| **WIRE TRANSMISSION** | **SENDER** | **RECEIVER** |
|---|---|---|
| Wire transmission of monies in the amount of $616,279.26 from Clearinghouse, from Wells Fargo Bank, account number x3929 to Wells Fargo Bank, account number x8477, in Fresno, California, which passed interstate | Clearinghouse | Sports non-profit, into Wells Fargo Bank, account number x8477 |

Dated: 12/11/24

_____
TERRANCE JOHN COX
Defendant